448 P.2d 722

The PRUDENTIAL INSURANCE COMPANY OF AMERICA, Plaintiff and Appellant,

v.

Opal JOHNSON, Individually and as Administratrix of the Estate of Clyde W. Johnson, Deceased, Defendant and Respondent.

No. 11159.

Supreme Court of Utah.

Dec. 13, 1968.

3. People v. Zammora, 66 Cal.App.2d 166, 152 P.2d 180, 204 (1944).

Van Cott, Bagley, Cornwall & Mc-Carthy, Grant Macfarlane, Jr., Salt Lake City, for plaintiff and appellant.

Heber Grant Ivins, American Fork, for defendant and respondent.

ELLETT, Justice:

The appellant, hereinafter called Insurance Company, brought this suit to cancel a policy after the death of the insured. The respondent as beneficiary counterclaimed for the benefits under the policy, at trial the court, sitting without a jury, dismissed the complaint and awarded Opal Johnson, the respondent, judgment on her counterclaim.

There is no dispute as to the facts of the case except as to whether the insured intended to defraud the insurance company. The facts are as follows:

The insured was a plumber and in October 1957 took out an insurance policy known as an employer's security policy, containing a death benefit provision, together with health and accident benefits. The requirement of eligibility for this policy was to have three or more persons employed by the insured. In 1960 the insured became ineligible to continue this policy because of a reduction in his force. The policy was terminated, and a new policy was issued by the insurance company covering the insured for certain health and accident benefits. This policy had no death benefit provision in it and was issued pursuant to a new application filled out and signed by the insured.

In September 1965 the insured again became eligible for the employer's security policy and obtained a policy effective September 3, 1965, covering him for health, hospital, surgical, and death benefits. In making application for this latter policy the insured was asked the following questions:

2. Have you or the person, if any, named in Question 1., Part II,

a. at any time been treated for or been told you or such person had trouble with any of the following: heart, high blood pressure, lungs, kidneys, urinary system, stomach, intestines, tumors, cancer, diabetes, back or joints, or any nervous disorders?

b. been in any hospital or other institution for observation, rest, diagnosis or treatment, during the past five years?

c. been examined by, or consulted a physician during the past five years?

d. any known physical impairments, deformities, or ill health not covered by the answers to 2., a., through c., of Part II?

e. ever been declined or postponed for life or health insurance, or had a policy rated up, waivered or issued for a smaller amount than applied for?

To each of said questions the insured answered, "No."

The insurance company relied upon these answers as being true in issuing a policy to the insured. However, the answers were in fact false. During the year 1964 the insured saw a doctor because of shortness of breath and swollen ankles. The doctor examined him and diagnosed his trouble as heart failure and mentioned to him the possibility of surgery and told him what was being done in repairing heart valves in that regard. He also told the insured that the insured had heart failure and that he needed digitalis and rest. The insured saw the doctor on five occasions during March 1964 regarding his condition.

Some seven months after the policy was issued, the insured was operated on for repairs to his heart and died as a result thereof.

■ The defendant now claims that the false answers as given do not amount to fraud. That claim is disposed of by the holding in the case of Chadwick v. Beneficial Life Ins. Co., 56 Utah 480, 191 P. 240 (1920). In that case false statements were made. This court at page 494 of the Utah Reports, 191 P. at page 245 stated:

* * * That the insured made the statement attributed to him stands in the record uncontradicted. That in itself ought to have ended this controversy.

If the insured at the time of making his application for a policy has knowl-

edge or good reason to know that he is afflicted with a disease that renders his condition serious, and that thereby his longevity will be prejudicially impaired, his statements and representations to the contrary in reply to specific inquiries constitute a fraud practiced upon the insurer, and which, when successfully proven, invalidates the policy.

The respondent further contended, and the trial court concluded as a matter of law, that certain provisions in the earlier policies carried over into the new policy and thus prevented the insurance company from availing itself of the defense of fraud. Those provisions read:

*Incontestability:* This Policy shall be incontestable as to coverage under Part LI [Death Benefits] after it has been in force during the lifetime of the Insured for one year from the Effective Date hereof, except for default in payment of premium for more than thirty-one days.

*Time Limit on Certain Defenses:* (a) After one year from the date a person becomes covered for benefits under Part DD, ND, HS or WB [Benefits other than death] of this Policy, no misstatements, except fraudulent misstatements, made by the applicant in any application for such coverage of the person shall be used to void this Policy as to such coverage or to deny a claim there-under for loss incurred with respect to the person or total disability (as defined in the Policy) of the person commencing after the expiration of such one year period.

(b) No claim for benefits under Part HS or WB for loss incurred with respect to any person or total disability (as defined in the Policy) of any person commencing after one year from the date the person becomes covered therefor under this Policy shall be reduced or denied on the ground that a disease or physical condition of the person not excluded from coverage by name or specific description effective on the date of loss had existed prior to the effective date of such coverage of the person.

These two provisions under "Time Limit on Certain Defenses" are time limitations and not matters affecting incontestability.

The trial court was in error in holding that the policy was incontestable because of the provisions in the prior policies. No fraud had been perpetrated in the applications made in 1957 and 1960. The false statement was made in 1965 relating to a matter which had its genesis in 1964. It is impossible to give a legal reason for permitting a one-year time limitation on the assertion of the defense of fraud to commence four years before the fraud was committed.

The 1965 policy differed from the one issued in 1960 in that it contained "life insurance" in addition to other provisions. Both prior policies were permitted to lapse by the insured, and there can be no question but what the insured knew he was applying for a new and different policy and that the insurance company would issue it solely upon the new application.

■ The respondent says that the insurance company should be estopped to deny coverage after having policies in effect for eight years. The elements required for estoppel are not present. The insured lost his first policy because he reduced the number of employees, and in 1960 he voluntarily took insurance for health and accident, etc. In 1965 when he employed three employees he again became eligible for a policy including life insurance. He could have maintained the 1960 policy had he cared to do so. The claim of estoppel is not available to respondent.

The law being as stated herein, the court under the evidence given would be compelled to find for the plaintiff. The judgment of the trial court is reversed, and that court is directed to enter judgment for the plaintiff on defendant's counterclaim for no cause of action and to enter judgment for the plaintiff on its complaint cancelling the policy. No costs are awarded.

CROCKETT, C. J., and CALLISTER, TUCKETT and HENRIOD, JJ., concur.