**WISCONSIN MORTGAGE ASSURANCE CORPORATION, a Wisconsin insurance company, Plaintiff,**

v.

**HMC MORTGAGE CORPORATION, a California corporation, et al., Defendants.**

Civ. No. 87–C–0237A.

United States District Court,
D. Utah, C.D.

May 15, 1989.

Stewart M. Hanson, Jr., and Charles P. Sampson, Salt Lake City, Utah, for plaintiff.

Robert L. Stolebarger and Steven P. Rowe, Salt Lake City, Utah, for defendants.

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

ALDON J. ANDERSON, Senior District Judge.

The plaintiff's predecessor in interest issued a certificate of mortgage insurance to the defendant lenders. In this action, the plaintiff seeks to rescind the certificate on the basis of a forgery and misrepresentations in the borrower's loan application.

The matter came before the court on the plaintiff's motion for summary judgment. A hearing on the motion was held on March 14, 1989. Stewart M. Hanson, Jr., and Charles P. Sampson represented the plaintiff. Rollin P. Chippey appeared for the defendants *pro hac vice*, with Robert L. Stolebarger and Steven P. Rowe.

After reviewing the oral and written arguments and documents of record, the court is persuaded that the plaintiff is entitled to summary judgment.

### Standards for Summary Judgment

Summary judgment is proper only when the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Federal Rules of Civil Procedure; *Barnson v. United States*, 816 F.2d 549, 552 (10th Cir.), *cert. denied*, —— U.S. ——, 108 S.Ct. 229, 98 L.Ed.2d 187 (1987).

The moving party must show entitlement beyond a reasonable doubt, and if an inference can be drawn from which the non-movant might recover, summary judgment should be denied. *Ewell v. United States*, 776 F.2d 246, 249–50 (10th cir. 1985). However, "the mere existence of *some* factual dispute between the parties will not defeat an otherwise properly supported motion." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986) (emphasis in original).

"Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* Moreover, summary judgment is *mandated* if "after adequate time for discovery and upon motion, ... a party ... fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

### Undisputed Facts

The undisputed facts as set forth in the parties' memoranda may be summarized as follows:

(1) On or about December 2, 1984, David A. Deuschle applied to the defendant HMC Mortgage Corporation ("HMC") for a residential loan of $73,150.00 to buy a home in West Valley City, Utah. Deuschle submitted a "Verification of Present Employment" with his loan application, and he represented that his monthly income was $2,665.00 per month and that he had been employed by Cate Industrial since January 3, 1980.

(2) HMC, as authorized agent of the defendant Homestead Savings and Loan Association ("Homestead"), then applied to Mortgage Guaranty Insurance Corporation ("MGIC") for mortgage insurance. HMC forwarded Deuschle's loan application, together with all supporting documents, to MGIC with the application for mortgage insurance.

(3) Based on the documents supplied by HMC, MGIC determined that Deuschle had a debt-to-income ratio of 39.1% (Declaration of Peter E. Olson, ¶ 10). Because that ratio was close to the 38% maximum ratio suggested in its Operating Manual, MGIC issued a certificate of insurance to Homestead on or about December 21, 1984.

(4) Homestead, in turn, approved Deuschle's loan request.

(5) In fact, Deuschle's base pay was $1,400.00 per month, and he had been employed by Cate Industrial only since January 1984. Moreover, the signature of Cate Industrial's manager, Mr. Priskos, was forged on the Verification of Present Employment.

(6) Deuschle's actual debt-to-income ratio was 68.5%—more than 30% above the guidelines in MGIC's operating manual.

(7) Three months after the loan closed, Deuschle defaulted in making his payments.

(8) On or about October 17, 1986, the defendants submitted a claim for loss on the loan to MGIC.

(9) MGIC refused the claim, informing the defendants of its intent to rescind the certificate and tendering all premiums paid for the mortgage insurance.

(10) The plaintiff succeeded to MGIC's interest.

### Issues of fact and law

In analyzing the case, the court finds it helpful to refer to the plaintiff and MGIC as "the insurers," the defendants as "the lenders," and Mr. Deuschle as "the borrower."

The lenders admit that there are misrepresentations in the borrower's loan application and a forgery in the accompanying verification, but they dispute whether the statements of the borrower should be considered part of the lenders' mortgage insurance application for which they are responsible. They also maintain that the insurers' reliance on the lenders' underwriting to discover misrepresentations in documents supplied by the borrower was unreasonable.

The court must first determine whether Utah or California law applies. The insurers say Utah law governs; the lenders insist that California law is the better choice.

### Choice-of-law

■ A federal court sitting in diversity must apply the choice-of-law rules of the state in which it sits. *Klaxon v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941); *Vandeventer v. Four Corners Electric Co.*, 663 F.2d 1016, 1017 (10th Cir.1981).

The insurers cite the following provision in the former Utah Insurance Code:

All insurance and insurance transactions in this state or affecting subject matter located wholly or in part within this state and all persons having to do therewith are governed by this Code....

Utah Code Ann. § 31–1–12 (1974).

Strictly speaking, this provision is not a "choice-of-law" rule. Furthermore, there is some question whether it has any application since it grants no substantive rights and has been repealed. Accordingly, the court believes Utah courts would look to general contract principles.

In the absence of an effective choice of law by the parties to a contract, Utah courts have interpreted that contract according to the *lex loci contractus*, or "law of the place of contracting." *See Crofoot v. Thatcher*, 19 Utah 212, 57 P. 171 (1899); *Trans–American Col's, Inc. v. Continental Acc. Serv. House*, 342 F.Supp. 1303, 1305 (D. Utah 1972); *Chevron Chemical Co. v. Mecham*, 536 F.Supp. 1036, 1040 (D.Utah 1982).

The rule of *lex loci contractus* was adopted in the first Restatement of Conflict of Laws. However, it was replaced by a "most significant relationship" test in the second Restatement. In many cases, the result is the same under either theory, as courts in this district noted in *Trans–America* and *Chevron, supra*. When the result differed, Judge Winder concluded that the Utah Supreme Court would follow the "most significant relationship" test. *First Sec. Bank of Utah, N.A. v. Felger*, 658 F.Supp. 175, 180–81 (D. Utah 1987). Judge Greene also "considers it likely that the Supreme Court of Utah would seek guidance from the Restatement [2d]." *Overthrust Constructors, Inc. v. Home Ins. Co.*, 676 F.Supp. 1086, 1088 (D. Utah 1987).

The Restatement (2d) lists the following factors as relevant in determining which state has the most significant relationship to a contract claim:

(a) the place of contracting,

(b) the place of negotiation of the contract,

(c) the place of performance,

(d) the location of the subject matter of the contract, and

(e) the domicile, residence, nationality, place of incorporation and place of business of the parties.

*Restatement (2d) of Conflict of Laws* § 188(2) (1971).

Here, the insurance application originated from Homestead's Utah branch in Midvale, Utah. The Telecommitment reply was ordered by HMC to be made to Utah. In addition, the underlying mortgage was negotiated in Utah, the mortgage application and supporting documents were executed in Utah, and the mortgage loan was secured by property located here.

On the other hand, the Master Policy was negotiated in California and the insurance certificate was sent to California. The insured lender's address listed on the certificate is Millbrae, California, and correspondence about the policy was sent between California and the insurers' offices in Wisconsin.

Weighing these factors, the court finds that Utah has the most significant relationship because the mortgage and insurance transactions originated in local offices here, even though those offices had national offices or parent companies elsewhere.

### Analysis under Utah law

The Utah law in effect in 1984 when the insurance certificate was issued provided:

(1) All statements and descriptions in any application for an insurance policy or annuity contract, or for the reinstatement or renewal thereof, by or in behalf of the insured or annuitant, shall be deemed representations and not warranties. Misrepresentations, omissions, concealment of facts, and incorrect statements shall not prevent a recovery under the policy or contract unless:

a. Fraudulent; or

b. Material either to the acceptance of the risk, or to the hazard assumed by the insurer; or

c. The insurer in good faith either would not have issued, reinstated or

renewed at the same premium rate, or would not have issued, reinstated or renewed a policy or contract in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise.

Utah Code Ann. § 31–19–8 (1974).

The Utah Supreme Court applied this provision to deny coverage under a life insurance policy, in *Berger v. Minnesota Mut. Life Ins. Co.*, 723 P.2d 388 (Utah 1986). There, the deceased had failed to disclose in the insurance application that he had diabetes. Although he died of a codeine overdose, unrelated to the diabetes, the court held that the nondisclosure was material to the insurer's acceptance of the risk.

The lenders point out that in *Berger* the insured himself was responsible for the misrepresentation or omission. They emphasize that in this situation of mortgage guaranty insurance, it was a third party—the borrower—who made the misrepresentations.

Section 31–19–8 has also been applied by a lower Utah court in the context of mortgage guaranty insurance, in *Mortgage Guaranty Insurance Corporation v. Williamsburg Savings Bank, et al.*, No. C86–9027 (3d Judicial District June 1, 1988). There, Judge Rigtrup granted the insurer's motion for summary judgment rescinding an insurance certificate based on misrepresentations concerning the borrower's employment, income and down payment. The lender argued that § 31–19–8 was inapplicable absent proof that the lender knew of the misrepresentations, but the court held that nothing in the statutory language required such a showing.

As the lenders in this case point out, the parties in *Williamsburg* had stipulated that the loan documents which the borrower had submitted could be considered part of the mortgage insurance application. The lenders argue that there should be a different result in this case because they dispute whether the borrower's statements are part of the mortgage insurance application.

Although the court is not aware of any other Utah case applying § 31–19–8 to mortgage guaranty insurance, courts in other jurisdictions have applied similar provisions in that context. *E.g., Firstier Mortgage Co. v. Investors Mortgage Insurance Co.*, 708 F.Supp. 1224 (W.D.Okla. 1989); *In re: Epic Mortgage Insurance Litigation*, 701 F.Supp. 1192 (E.D.Va. 1988); *United Guar. Res. Ins. v. American Pioneer Sav. Bank*, 655 F.Supp. 165 (S.D.Fla.1987). In *Firstier*, the court specifically found that representations by the borrowers in documents the lender submitted with the insurance applications were made in behalf of the lender for the purpose of inducing the insurer to underwrite insurance. 708 F.Supp. at 1229. Applying an Oklahoma statute much like Utah's, the court granted the insurer summary judgment based upon a finding that "the insurance applications contained misrepresentations that were material to the risk assumed by [the insurer]." At 1229–30, 1231.

In *Affiliated Mortgage Investments Inc. v. TICOR*, No. 76–2073 (N.D.Ga.1977), the court likewise granted the insurer's motion for summary judgment. Under a Georgia statute similar to Utah's, there was "no doubt that the Affidavit Application representations [by the borrower] were made 'by or on behalf of the insured.'" Slip op. at 6.

Another case on point is *TCF Mortgage Corporation v. Verex Assurance, Inc.*, 709 F.Supp. 164 (D.Minn.1989). There, the court denied the lender's motion for summary judgment under a Minnesota statute similar to Utah's. The court held that the borrower's misrepresentations were made on behalf of the lender because the documents containing those misrepresentations were submitted by the lender with its insurance application and the insurer required the documents before coverage could be issued.

In the present case, the lender likewise submitted the borrower's documents with its insurance application, and the insurers required those documents for insurance

coverage. In these circumstances, there is no genuine factual issue as to whether the misrepresentations were part of the insurance application or whether they were submitted on the insured's behalf.

Under Utah Code Ann. § 31–19–8, the "insurer must prove that the misrepresentation was made with the intent to deceive *or* that the matter misrepresented was material *or* that the insurer in good faith would not have issued the policy if the true facts had been made known to the insurer." *Hardy v. Prudential Ins. Co of America,* 763 P.2d 761, 766 (Utah 1988) (emphasis in original). These insurers have shown that the matter misrepresented was material to their acceptance of the risk. Thus, they are entitled to rescission.

Utah's construction of § 31–19–8 is consistent with other courts' interpretation of similar statutory schemes as furnishing three independent grounds for the rescission of a policy. *Id.,* n. 5. Under these schemes, unintentional misrepresentation can void an insurance policy, and "no knowledge of incorrectness, untruth, or deliberate falsehood is required." *United Guarantee,* 655 F.Supp. at 168. Nevertheless, an insurer "cannot escape liability on a policy if it is established that there should have been no actual reliance on the applicant's misrepresentation." *Hardy,* 763 P.2d at 770.

There are two corollaries to the rule enunciated in *Hardy:*

(1) if the insurer has information which would have put a prudent person on notice of possible falsity ..., the insurer cannot rely on the misrepresentation; and

(2) if the insurer chooses to make an independent inquiry and a reasonable search would have uncovered the misrepresentation but the facts were not discovered because the investigation was cursory, the insurer cannot rely on the misrepresentation.

*Id.* Neither of these corollaries applies in this case because the lenders have not alluded to sufficient facts that the insurers had information which would have put the insurers on notice of possible falsity or that the insurers chose to make an independent inquiry.

Finally, the court notes that policy considerations favor placing responsibility for any misrepresentations in the mortgage guaranty insurance application on the lender rather than the insurer. The lender is involved in the underlying loan transaction and is in a better position to verify the facts submitted to it by the borrower. The mortgage guaranty insurance industry operates on the basis that mortgage insurers must rely on the representations made by their lenders in their insurance applications. *See In re: Epic,* 701 F.Supp. at 1218, 1237–39; *United Guaranty,* 655 F.Supp. at 168.

For these reasons, the plaintiff's motion for summary judgment is granted. The court requests that plaintiff's counsel prepare judgment on the order.

ORDER DENYING DEFENDANTS' MOTION TO STRIKE PORTIONS OF OLSON'S AFFIDAVIT AND PLAINTIFF'S MOTION TO STRIKE PORTIONS OF EVANS' AFFIDAVIT

The defendants have filed a motion to strike portions of the affidavit of Peter E. Olson because it violates Utah's rule regarding the admissibility of parole evidence and because it is not founded upon personal knowledge. The plaintiff has filed a motion to strike portions of the affidavit of Glen Britton Evans because it lacks foundation and relevance and because it is based upon hearsay. Both of these affidavits relate to the plaintiff's motion for summary judgment.

The court finds both affidavits admissible to show the affiants' understanding of the law and practice of their respective industries, which pertain to the issues of whether the misrepresentations in the borrower's documents were material to the insurer's acceptance of the risk and whether the insurer's reliance upon those misrepresentations was reasonable.