61 F.3d 799
 Rhea Dawn JONES, Plaintiff-Counter-Defendant-Appellant,
v.
NEW YORK LIFE & ANNUITY CORPORATION, a Delaware corporation,
Defendant-Counter-Claimant-Appellee.
 No. 94-4059.
 United States Court of Appeals,
Tenth Circuit.
 July 31, 1995.
 
 R. Paul Van Dam of Anderson & Watkins, P.C., Salt Lake City, UT, for appellant.
 Casey K. McGarvey of Van Cott, Bagley, Cornwall & McCarthy (Stephen Marshall with him on the brief), Salt Lake City, UT, for appellee.
 Before ANDERSON, Circuit Judge, McWILLIAMS, Senior Circuit Judge, and BROWN, Senior District Judge.*
 McWILLIAMS, Senior Circuit Judge.
 
 
 1
 Rhea Dawn Jones, the beneficiary under a policy of life insurance issued her deceased husband, Kelly Jones, by New York Life & Annuity Corporation (New York Life), brought suit in the United States District Court for the District of Utah, Central Division, against New York Life to recover under the terms of the policy. Jurisdiction was based on diversity. 28 U.S.C. Sec. 1332(a)(1). New York Life denied liability under the policy based on misrepresentations in the application for the insurance concerning Kelly Jones' health and asserted a counterclaim seeking rescission of the policy.
 
 
 2
 After a four-day trial to the court, the district court entered judgment in favor of Jones and against New York Life in the amount of $164,300, $100,000 thereof representing the face amount of the policy, and the remaining $64,300 representing prejudgment interest.
 
 
 3
 The principal issue at trial was whether Rhea Jones was bound by the several undisputed misrepresentations[1] in the application for insurance. Jones' position on this matter was that, although there were misrepresentations in the application, her husband, Kelly Jones, had, in fact, given correct verbal answers to the agent of New York Life, Richard Doerr, concerning his blood pressure and his "blood condition," and that the latter had incorrectly recorded Kelly Jones' answers to questions propounded to him by agent Doerr. As concerns Kelly Jones' dependency on narcotic pain medications, Rhea Jones' position was that agent Doerr never asked Kelly Jones about that particular matter. In this regard, the district court agreed with Rhea Jones and found that Kelly Jones had made no misrepresentations to agent Doerr, that the misrepresentations in the application were solely attributable to Doerr and that his acts could not be attributed to Kelly Jones so as to bar his wife, Rhea Jones, from recovery on the policy issued by New York Life.
 
 
 4
 On appeal we reversed and remanded for further proceedings. See Jones v. New York Life, 985 F.2d 503 (10th Cir.1993). (No petition for rehearing was filed.) The gist of our opinion was that under Theros v. Metropolitan Life Insurance Co., 17 Utah 2d 205, 407 P.2d 685 (1965), Kelly Jones and his wife, Rhea Dawn Jones, the beneficiary under the policy of insurance issued Kelly Jones by New York Life, were bound by the misrepresentations contained in the application. In this connection, we noted that on August 8, 1984, Kelly Jones, Rhea Jones and Doerr had all signed the application, which was completed in the Jones' residence, and that immediately above their signatures appeared the following:
 
 THOSE PERSONS WHO SIGN BELOW AGREE THAT:
 
 5
 1. All of the statements which are part of the application are correctly recorded, and are complete and true to the best of the knowledge and belief of those persons who made them.
 
 
 6
 2. No agent or medical examiner has any right to accept risks, make or change contracts, or give up any of NYLIC's [New York Life Insurance Company] or NYLIAC's [New York Life Insurance and Annuity Corporation] rights or requirements.
 
 
 7
 However, even though we concluded that Rhea Jones was bound by the misrepresentations in the application, we remanded the case with direction that the district court consider, and determine, whether Rhea Jones could still recover under the provisions of Utah Code Ann. Sec. 31-19-8(1), repealed in 1986, which provided that misrepresentations in an application for insurance would not prevent recovery on the policy unless the misrepresentations were (1) fraudulent, or (2) material either to the acceptance of the risk or to the hazard assumed by the insurer, or (3) the insurer would not have issued the policy if the true facts had been made known to the insurer either by the application for the policy or otherwise.
 
 
 8
 On remand, New York Life filed a motion for entry of judgment in its favor based on its belief that the evidence presented at the earlier trial showed that each of the three statutory grounds for precluding recovery on the policy as set forth in Utah Code Ann. Sec. 31-19-8(1) had been met, "any one of which would be sufficient to justify rescission under Utah Code Sec. 31-19-8(1), repealed 1986." Jones filed a response to New York Life's motion in which Jones asked that judgment be entered in her favor. Hence, both parties apparently were willing to have the district court resolve the remaining issues on the record as previously made.
 
 
 9
 After hearing, the district court granted New York Life's motion and later entered judgment rescinding the policy here involved and dismissing the action "in its entirety with prejudice and on its merits," and in line therewith also dismissed Rhea Jones' claim for punitive damages. In so doing, the district court found that the misrepresentations in the application were material to the risk assumed by New York Life and that, if it had known the true facts, it would not have issued the policy, and further that New York Life was not equitably estopped from relying on the representations in the application.
 
 
 10
 As indicated, there was more than one misrepresentation[2] in the application, and the district court in its judgment made special note of the fact that Kelly Jones had never in any way disclosed to New York Life or its agent that he "had been counseled, treated and hospitalized because of dependency on narcotic analgesic medication" and that "New York Life is not estopped from relying on the misrepresentations in Mr. Jones' application for life insurance that he had not been so counseled, treated or hospitalized to avoid liability on the insurance policy."
 
 
 11
 Jones now appeals the judgment thus entered. Her position on appeal is, necessarily, that on the record as made the district court, as a matter of law, was compelled to deny New York Life's motion and to grant her request for judgment in her favor. That is not our view of the matter.
 
 
 12
 Our present task, of course, is to simply review the judgment of the district court entered on remand. Although the district court, in its Supplemental Findings of Fact, Amended Conclusions of Law and Amended Judgment, recognized that there were "misrepresentations" in the application, it identified only one, the misrepresentation in the application that Kelly Jones had not been counseled, treated or hospitalized because of dependency on narcotic analgesic pain medications.[3] The district court held that, under all the facts and circumstances, such representation was material to the risk assumed, that New York Life was not estopped from relying thereon, and that accordingly, New York Life was entitled to rescission, and the further holding that Rhea Jones was not entitled to recover under the policy. Our study on the matter indicates that the record supports such a finding and conclusion, and on that basis, we affirm.
 
 
 13
 On appeal, Rhea Jones concedes that under Theros, even though Kelly Jones may have given agent Doerr correct answers to questions contained in the application, which answers Doerr incorrectly recorded in the application, she is nonetheless bound by those misrepresentations by his act of signing the application, where, as here, immediately above his signature was the statement that by his signature the signatory agreed that all statements in the application had been "correctly recorded."
 
 
 14
 Counsel would escape the rule of Theros, however, on the ground that New York Life did not rely on any misrepresentation in the application and, on the contrary, either knew, or should have known, of Kelly Jones medical and health problems, and either conducted, or should have conducted, its own investigation of Kelly Jones' condition. In such circumstances, Jones argues here that New York Life is estopped from seeking rescission and, consequently, is estopped from denying liability under the policy, citing Hardy v. Prudential Ins. Co. of America, 763 P.2d 761 (Utah 1988) and Major Oil Co. v. Equitable Life Assurance Soc'y, 457 F.2d 596 (10th Cir.1972).[4]
 
 
 15
 Both cases cited by Appellant stand for the proposition that an insurance company cannot escape liability on a policy if it is established that there should have been no actual reliance on the applicant's misrepresentations, concealment, or omission. See Hardy, 763 P.2d at 770; Major Oil, 457 F.2d at 602 (citations omitted). Appellant's reliance on this rule, however, is misplaced. In the instant case, although New York Life had information from a previous application for life insurance by Kelly Jones regarding the possibility of hemophilia, there is nothing in the record to indicate that New York Life should have known of Jones' dependence on narcotic analgesic pain medications.
 
 
 16
 On the question of estoppel, the district court specifically held that New York Life was not estopped from relying on the misrepresentation in Mr. Jones' application for life insurance that he had not been so counseled, treated, or hospitalized because of dependency on narcotic analgesic medication.[5] Such was a fact issue, and contrary to Jones' suggestion, the district court was not compelled, as a matter of law, to find that New York Life was estopped from relying on that particular misrepresentation. We reject any suggestion that before issuing the policy New York Life knew or should have known that Kelly Jones had been treated for his addiction to pain medications. The record reveals that the only evidence received by New York Life was an attending physician's statement submitted by Kelly Jones' doctor indicating that Jones was hospitalized for stomach and back pain and listing the medications prescribed to Jones. There was nothing in the physician's statement to suggest that Kelly Jones was hospitalized or treated for his addiction. Consequently, New York Life did not possess the information necessary to put it on notice of the possible falsity in Kelly Jones' application and to make a further inquiry into Kelly Jones' drug problems, sufficient to invoke the above stated rule.
 
 
 17
 Counsel also argue that the misrepresentation relating to alcohol or drug problems was not material to the risk assumed by New York Life. The district court found that such misrepresentation was material and in our view the record amply supports such finding. There was testimony that the misrepresentation relating to Kelly Jones' drug problem was "material," which would seem to us rather obvious.
 
 
 18
 Judgment affirmed.
 
 
 
 *
 The Honorable Wesley E. Brown, Senior District Judge, District of Kansas, sitting by designation
 
 
 [1]
 In a pretrial order it was stipulated, inter alia, that Kelly Jones had, within two years prior to his signing the application for insurance, been treated for elevated blood pressure, and from his birth had a genetic blood condition known as Christmas Disease, and, within five years prior to his signing the application, had been counseled because of dependency on narcotic analgesic pain medication, and had been diagnosed as suffering from depressive neurosis accompanied by some organic impairment and residual effect of substance abuse, none of which was set forth in answers to questions contained in the application for insurance
 
 
 [2]
 There were at least three misrepresentations in Jones' application for insurance. In addition to the misrepresentation regarding Kelly Jones' dependence on narcotic analgesic medication, they were the representations that Kelly Jones had not been treated within the last two years for elevated blood pressure and the representation that Kelly Jones had not been treated within the last two years for a blood disorder. It is undisputed that on the date that the application was signed, both Rhea and Kelly Jones knew that Kelly Jones suffered from high blood pressure and had an incurable blood condition known as Christmas Disease, and in 1983, had been counseled, treated and hospitalized due to his dependency on narcotic analgesic pain medication. Moreover, evidence adduced at trial showed that Kelly Jones had a long history of alcohol and drug abuse, including the use of marijuana, cocaine, "speed," and pain medications, and as a result had suffered from schizophrenia, depressive neurosis and organic impairments
 
 
 [3]
 The district court in its order made no mention of "elevated blood pressure" or "blood condition."
 
 
 [4]
 In her complaint Rhea Jones alleged, inter alia, that if there were misrepresentations in the application, New York Life was "estopped from claiming ignorance of such...." In its amended answer New York Life alleged, inter alia, that Rhea Jones was "estopped from asserting [her] ... claim," because of Kelly Jones' misrepresentations relating to his "health history."
 
 
 [5]
 At the conclusion of the hearing, upon remand, on New York Life's Motion for Entry of Judgment, the district judge stated that "it appears to me as well as I remember the record and look at the record that the company issued the policy in reliance upon the application."