**Rhea Dawn JONES, Plaintiff–Counter–Defendant–Appellee/Cross–Appellant,**

v.

**NEW YORK LIFE & ANNUITY CORPORATION, a Delaware corporation, Defendant–Counter–Claimant–Appellant/Cross–Appellee.**

**Nos. 91–4184, 91–4202.**

United States Court of Appeals, Tenth Circuit.

Feb. 10, 1993.

**504**

Anthony M. Thurber, Salt Lake City, UT, for plaintiff-appellee.

Casey K. McGarvey, Salt Lake City, UT (and R. Stephen Marshall of Van Cott, Bagley, Cornwall & McCarthy, with him on the brief) for defendant-appellant.

Before TACHA, Circuit Judge, McWILLIAMS, Senior Circuit Judge, and O'CONNOR, District Judge.[*]

McWILLIAMS, Senior Circuit Judge.

Rhea Dawn Jones, widow of Kelly Jones, brought suit in the United States District Court for the District of Utah against New York Life & Annuity Corporation (New York Life), a Delaware corporation, as beneficiary under a policy of life insurance in the face amount of $100,000 issued to Kelly Jones by New York Life. Jurisdiction was based on diversity of citizenship. 28 U.S.C. § 1332(a)(1).

In her complaint, plaintiff alleged that before signing the application for insurance, Kelly Jones had in her presence "fully and truthfully disclosed all facts and information concerning [his] health history ... known to him in response to inquiries of defendant's agent, who completed the application himself," and that "[d]efendant's agent knowingly or negligently omitted certain health information from the subject application despite having knowledge thereof from the responses given to

his inquiries." Plaintiff further alleged that New York Life issued its policy of whole life insurance in the face amount of $100,000 on the life of Kelly Jones with an inception date of August 8, 1984, and that plaintiff was named therein as beneficiary. It was further alleged in the complaint that Kelly Jones died on February 20, 1985, of natural causes and that thereafter New York Life "refused to pay all or any portion of the policy proceeds for the stated reason that [Kelly Jones] failed to disclose certain information concerning his previous health history in the application."

In addition to seeking judgment for the face amount of the policy plus interest, plaintiff also sought punitive damages and, in support of that claim, alleged that the defendant's denial of coverage was "willful, malicious, wanton or done with an intentional disregard for the rights and property of others."

By answer, New York Life denied liability, alleging that it had rescinded the policy and had refunded premiums paid, with interest, after learning of fraudulent representations concerning Kelly Jones' health history in the application for insurance. New York Life alleged that it had become aware of the fraudulent representations as the result of an investigation conducted subsequent to Kelly Jones' death. By counterclaim, New York Life sought a judicial determination that the policy had been rescinded and that the defendant was relieved from all liability thereon.

The parties submitted to the district court a pretrial order, which was accepted by the court. The pretrial order contained a list of "Uncontroverted Facts," which were "established by admissions in the pleadings or by stipulations of counsel." The pretrial order also contained a recital of the contested issues of fact. At trial, numerous witnesses testified, and at the conclusion of the trial the district court took the matter under advisement. Some time later, the district court, in an unpublished 15–page opinion, made findings of fact and conclusions of law, the gist of

[*] Honorable Earl E. O'Connor, U.S. District Judge for the District of Kansas, sitting by designation.

which was that New York Life had improperly rescinded Kelly Jones' life insurance policy and that his widow and beneficiary, Rhea Dawn Jones, was entitled to $100,000, the face amount of the policy. By amended judgment, the district court allowed the plaintiff prejudgment interest and accordingly entered judgment against New York Life for $164,300. In that amended judgment, the district court, without comment, stated that "plaintiff's claims for insurer bad faith, intentional infliction of emotional distress and punitive damages are dismissed, with prejudice and upon the merits."

In No. 91–4184, New York Life appeals that part of the amended judgment which entered a judgment against it for $164,300. In No. 91–4202, plaintiff appeals that part of the amended judgment which dismissed her claim for punitive damages. 28 U.S.C. § 1291.

As indicated, the core of this dispute concerns the facts and circumstances surrounding the preparation and execution of the application for insurance, which took place in the Jones family residence. Present at that time were Kelly Jones, Rhea Dawn Jones, and the agent from New York Life, Richard Doerr. Also present were a brother and sister of Rhea Dawn Jones. Agent Doerr filled out the application.

Question No. 15 in the application reads as follows:

In last 2 years, has any such person had or been treated for (If "Yes" to (a) or (b), give name and full details in Quest. 18.)

(a) elevated blood pressure, heart murmur, irregular pulse, abnormal electrocardiogram, or diabetes?

(b) any lung, kidney, liver, pancreas, intestinal, circulatory, blood, brain, nervous system, or back disorder?

In response to question No. 15(a) in the application, the agent answered "No." In response to question No. 15(b), the agent answered "Yes" and circled "back disorder."

In response to question No. 18, which required "full details" if either question No. 15(a) or (b) was answered in the affirmative, agent Doerr wrote as follows:

#15 Back injury, December '82, complete recovery, Castleview Hospital, Dr. Potter, County Fairgrounds Rd., Price, Utah 84501.

Question No. 16 of the application read as follows:

In last 5 years, has any such person: (If "Yes" to (a) or (b), submit Conf. Form 17480 and give name if not Prop. Insured in Q. 18.)

(a) because of the use of alcohol or drugs, been counselled, treated, or hospitalized, or been absent from work or school?

(b) had any psychiatric, emotional, or mental health condition for which medical treatment or hospitalization was advised?

In response to both parts of question No. 16, agent Doerr answered "No."

Based on the testimony of plaintiff and her sister, who was present at the time the application was prepared and executed, the district court found that Kelly Jones had in fact advised agent Doerr that he had high blood pressure and that agent Doerr had failed to note such in response to question No. 15(a). Agent Doerr testified that he had no specific recollection as to whether Kelly Jones disclosed his high blood pressure.

Based on the testimony of plaintiff and her brother, who also was present at the time the application was prepared and executed, the district court found that Kelly Jones had also advised agent Doerr that he had, from birth, suffered from Christmas Disease, a blood disorder similar to hemophilia, and that agent Doerr had again failed to properly record such in response to question No. 15(b).[1]

---

1. As concerns question No. 15(b), the district court found, alternatively, that the recorded answer did not assert a fraudulent or material misrepresentation because it gave New York Life actual knowledge of the blood disorder in that checking the "yes" box for question No. 15(b) could have been construed to mean that Kelly Jones suffered *all* the ailments listed in question No. 15(b), including blood disorder, even though only "back disorder" was circled.

As concerns question No. 16, the district court, on the basis of plaintiff's testimony, found that agent Doerr had failed to ask Kelly Jones *any* question concerning alcohol or drug abuse and had nonetheless answered question No. 16 in the negative. Agent Doerr testified that he had no present recollection of having asked Kelly Jones that particular question.

The application was signed by agent Doerr, Kelly Jones, and Rhea Dawn Jones, although neither Kelly Jones nor Rhea Dawn Jones read the application before signing. Immediately above the three signatures appeared the following:

THOSE PERSONS WHO SIGN BELOW AGREE THAT:

1. All of the statements which are part of the application are correctly recorded, and are complete and true to the best of the knowledge and belief of those persons who made them.

2. No agent or medical examiner has any right to accept risks, make or change contracts, or give up any of NYLIC's [New York Life Insurance Company] or NYLIAC's [New York Life Insurance and Annuity Corporation] rights or requirements.

The district court found that at the time they signed the application both Kelly Jones and plaintiff knew that Kelly Jones suffered from high blood pressure and an incurable blood condition called Christmas Disease and that in 1983 Kelly Jones was counseled, treated and hospitalized due to his dependency on narcotic analgesic pain medication. The district court further found that New York Life issued a policy of life insurance in December 1984, effective August 8, 1984, on the life of Kelly Jones, that the policy, with a copy of the application attached, was received by plaintiff and the insured on February 13, 1985, and that Kelly Jones died on February 20, 1985, of arteriosclerotic cardiovascular dis-

ease. The district court further found that on June 7, 1985, New York Life sent plaintiff a notice of its rescission of the policy and a check for $56.09, a refund of the initial premium plus interest.

In its Findings of Fact and Conclusions of Law, the district court initially noted that the application contained at least two incorrect statements regarding Kelly Jones' health history. We agree. In connection therewith, the district court observed that the plaintiff's position was that these incorrect statements in the application were solely the fault of New York Life's agent, Doerr, and that New York Life's position was that the "source of the false representations" was Kelly Jones himself. Based on its findings regarding the facts and circumstances surrounding the preparation and execution of the insurance application, as discussed above, the district court concluded that Kelly Jones made *no* misrepresentation to agent Doerr, that the misrepresentations which were in the application were solely attributable to Doerr, and, further, that since Doerr was an agent for New York Life, his acts could not in anywise be attributed to Kelly Jones so as to bar plaintiff from recovery on the policy issued by New York Life.

The starting point of our discussion is Utah Code Ann. § 31–19–8(1), repealed in 1986, which provided as follows:

(1) *All statements* and descriptions *in any application* for an insurance policy or annuity contract, or for the reinstatement or renewal thereof, *by or in behalf of the insured or annuitant*, shall be deemed to be representations and not warranties. *Misrepresentations, omissions*, concealment of facts, and incorrect statements *shall not prevent a recovery* under the policy or contract *unless:*

(a) *fraudulent;* or

---

We are not persuaded by this reasoning. It ignores the "explanation" in question No. 18 of the "yes" answer to question No. 15(b), where the only reference was to a "back injury" suffered in December 1982, from which there had been "complete recovery." It also disregards the parties' stipulation in the Pretrial Order that

"[t]he facts set forth in the application, paragraph 15, ... *are incorrect and misrepresent the true fact* that Kelly R. Jones ... from his birth had a genetic blood condition known as Christmas Disease, a disorder related to hemophilia" (emphasis added).

(b) *material* either to the acceptance of the risk, or to the hazard assumed by the insurer; or

(c) *the insurer* in good faith either *would not have issued the policy* or contract, or would not have issued, reinstated, or renewed it at the same premium rate, or would not have issued, reinstated, or renewed a policy or contract in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, *if the true facts had been made known to the insurer* as required either by the application for the policy or contract or otherwise. (emphasis added)

■ The gist of the statute is that misrepresentations and omissions in an application for insurance will not prevent recovery under the policy unless such are: (1) fraudulent, or (2) material either to the acceptance of the risk or to the hazard assumed, or (3) the insurer would not have issued the policy if the true facts had been known to the insurer. In *Berger v. Minnesota Mutual Life Insurance Company*, 723 P.2d 388 (Utah 1986), the Utah Supreme Court held that the statutory grounds for rescission in Utah Code Ann. § 31–19–8(1) are disjunctive, not conjunctive, i.e. that an insurer need only prove one in order to invalidate the policy.

In its Conclusions of Law, the district court did recognize that, under the provisions of Utah Code Ann. § 31–19–8(1), New York Life "need only prove one of the grounds contained in § 31–19–8(1) in order for its rescission of the policy to be valid." However, the succeeding conclusion of the district court was that "an insurer cannot avoid a policy by taking advantage of a misstatement in the application, material to the risk, not due to the insured's bad faith," citing *J. Appleman, Insurance Law and Practice*, § 9401 (1981). We believe this conclusion to be inconsistent with the meaning of the statute.

Although the district court did not discuss *Theros v. Metropolitan Life Insurance Co.*, 17 Utah 2d 205, 407 P.2d 685 (1965), we find that case to have considerable bearing on the instant one. In that case, suit was brought on an insurance policy where the insurer refused payment based on misrepresentations in the application. It was conceded that certain answers to questions in the application were untrue and were material to the risk, that the insurer had relied on them, and that the insurer would not have issued the policy had it known the truth, at least not without a medical examination. In a pretrial hearing, the deposition of the insurer's agent was published, in which the agent testified that he had filled out the application and, on his own initiative, had inserted false answers to questions in the application, although the insured had given him truthful information. The record did not affirmatively show that the insured had read the completed application before signing, and it was therefore apparently assumed that he had not.[2] In this general setting, the state district court granted summary judgment for the insurer.

On appeal in *Theros*, the Utah Supreme Court affirmed the grant of summary judgment. In so doing, the Utah Supreme Court recognized as a "general rule" that "if an applicant gives truthful answers to the questions contained in the application, but they are falsely recorded by an agent of the insurer, then the latter cannot rely upon the falsity of such answers to avoid liability under the policy issued upon the application in the absence of fraud, collusion, actual knowledge of the insured or the existence of circumstances from which constructive knowledge of such falsity might be imputed to him." 407 P.2d at 688.

At the same time, the Utah Supreme Court in *Theros* recognized what it also characterized as the majority rule—"that an insured is under a duty to read his application before signing it, and will be

---

**2.** Immediately above the insured's signature on the application appeared the following printed statement: "I have read the foregoing answers before signing. They have been correctly writ-ten, as given by me, and are true and complete. There are no exceptions to any such answers other than as stated therein." 407 P.2d at 687.

considered bound by a knowledge of the contents of his signed application." *Id.* In connection therewith, the Utah Supreme Court spoke as follows:

> The facts here presented provide absolutely no basis for applying any exception to the basic contract law. The record is devoid of any facts or circumstances that would indicate or imply that Theros was by fraud, accident, misrepresentation, imposition, illiteracy, artifice or device reasonably prevented from reading the application before signing it. *Therefore, he is, by law, conclusively presumed to have read the application and his beneficiary is bound by the contents thereof.* It therefore follows that the lower court should be affirmed. (emphasis added)

■ As indicated, we read the district court's initial and critical finding to be that Kelly Jones made no misrepresentation to agent Doerr, and that the misrepresentations in the application were those of Doerr, and that under the circumstances of the case Kelly Jones, and his widow, were in no wise bound by Doerr's misrepresentations. We think such findings are at odds with the holding in *Theros* that where an applicant gives verbal responses to an insurer's agent, who then fills out the application, the applicant has a duty to read the application before signing it and make certain his verbal responses have been correctly recorded, and that in the absence of fraud, accident, misrepresentation, imposition, illiteracy, artifice or device (any of which would reasonably prevent the applicant from reading the application before signing), the applicant, by his act of signing the application, "is, by law, conclusively presumed to have read the application and

his beneficiary is bound by the contents thereof." [3]

In the instant case, nothing in the record indicates or suggests that Kelly Jones was somehow tricked or led into signing the application without reading it, and the district court did not find, or intimate, that such was the case. Kelly Jones simply signed the application without reading it, and, under *Theros*, he is bound by the misrepresentations contained therein.

However, even though Kelly Jones made misrepresentations in his application for insurance, under Utah Code Ann. § 31–19–8(1), the plaintiff may still recover under the policy unless the insurer establishes that the misrepresentations were either fraudulent, or material to the risk assumed, or that the insurer would not have issued the policy if he had known the "true facts." Since the district court held that Kelly Jones was not bound by agent Doerr's misrepresentations, we do not regard the district court as having ruled on any of the three alternative statutory grounds by which New York Life could prevent recovery on the policy. On remand, the district court should consider and rule on those matters.

In this court, the plaintiff's basic position is that even assuming that there were misrepresentations in the application, which Kelly Jones adopted by his act of signing the application, New York Life did *not* rely on the misrepresentations in issuing the policy, and that only after conducting its own, but limited, investigation of the matter, did it decide to issue the policy. In this regard, there is evidence that New York Life inquired of one of Kelly Jones' doctors concerning any blood disorder and also required Kelly Jones to sign a subsequent statement that he had no blood problem. [4]

---

**3.** As above stated, the district court in the instant case declared that "an insurer cannot avoid a policy by taking advantage of a misstatement in the application, material to the risk, not due to the insured's bad faith," citing *J. Appleman, Insurance Law and Practice,* § 9401 (1981). The plaintiff in *Theros* also relied on that same language from *Appleman.* The Utah Supreme Court held, in effect, that such language was not controlling where the insured signed the application without reading it. ·

**4.** On December 9, 1984, which was prior to the actual issuance of the policy, at the request of New York Life, Kelly Jones signed a statement wherein he stated he had "never been diagnosed or been treated for a blood condition." The district court found that although Jones "knew" he had Christmas Disease, he nonetheless had never been "diagnosed" or "treated" therefor, and hence his statement was technically correct.

We cannot tell from the record before us whether New York Life's reliance on the misrepresentations in the application was an issue in the trial. The central issue in the district court certainly was whether Kelly Jones made misrepresentations in his verbal responses to agent Doerr's questions, or whether Jones made truthful statements concerning his medical history and agent Doerr incorrectly recorded those responses, and, if the latter, whether Kelly Jones was bound by agent Doerr's incorrect answers in the application.

The closest thing to suggesting nonreliance by New York Life on misrepresentations in the application appeared in paragraph 15 of the complaint, where plaintiff alleged that assuming misrepresentation or omission of fact in the application, New York was "estopped from claiming ignorance of such facts at the time it issued the subject policy by reason of the knowledge possessed by its agent Richard C. Doerr." Also, in the pretrial order, one of plaintiff's claims is said to be based on whether "defendant had a duty to conduct a reasonable investigation into the insured's health history from information provided to its agent which inquiry would have disclosed the true facts."

Be all that as it may, nothing indicates that the district court made any finding that in issuing the policy to Kelly Jones New York Life did not rely on the statements in the application and instead relied on its own investigation, or that New York Life was "on notice" and should have made a more complete check of the matter. We cannot find that the district court reached the issue upon which plaintiff has primarily relied in this court.

In line with the foregoing, we reject Jones' suggestion that *Hardy v. Prudential Insurance Company of America*, 763 P.2d 761 (Utah 1988), requires affirmance. In that case, suit was brought on a policy of life insurance, and, on motion, summary judgment was entered for the insurer on the ground that the insured—not the agent—had made misrepresentations in the application. On appeal, the Utah Supreme Court reversed and held that whether the insured made misrepresentations in the application was a question of fact, not one of law. We parenthetically note that in thus holding, the Utah Supreme Court stated that it did not need to then decide whether a misrepresentation, "if any," was fraudulent or material or whether the policy would have been issued if the insurer had known the true facts, as provided for in Utah Code Ann. § 31–19–8(1). In that general setting, the Utah Supreme Court stated that an insurer could not escape liability on a policy if it is established that "there should have been no actual reliance on applicant's misrepresentations, concealment or omissions," citing *Major Oil Corp. v. Equitable Life Assurance Society of Utah State*, 457 F.2d 596 (10th Cir.1972). In our case, whether the issue of "reliance" was before the district court is unclear, though it is clear that the district court did *not* rule on that particular question.

In her complaint, Jones sought punitive damages based on New York Life's intentional infliction of emotional distress. The pretrial order identified one of plaintiff's claims as based on "bad faith conduct." In its findings and conclusions holding that plaintiff was entitled to judgment in the face amount of the policy, the district court did not mention plaintiff's claim for punitive damages. In the amended judgment, by which time plaintiff had apparently asked for a trial of her claim for punitive damages, the district court, without explanation, simply dismissed the claim for punitive damages with prejudice and on its merits.

By No. 91–4202, plaintiff appeals the dismissal of her claim for punitive damages, claiming that the trial of this matter was limited to the defendant's counterclaim based on rescission and that her claim of punitive damages was reserved for future consideration, pending the outcome of defendant's counterclaim. New York Life argues that plaintiff's various claims and its counterclaim were all tried at the same time, and, alternatively, suggests that along the way plaintiff abandoned her claim for punitive damages.

**510**

We find nothing in the record to indicate why the district court dismissed plaintiff's claim for punitive damages. It would be difficult for us to affirm this order when we do not know the reason for it; therefore, that portion of the judgment dismissing the plaintiff's claim for punitive damages should be vacated and the claim for punitive damages remanded for further consideration, depending again, of course, on the ultimate determination of New York Life's liability under the policy.

In No. 91–4184, the judgment is reversed and the cause remanded with the direction that further proceedings be consonant with the views herein expressed. In No. 91–4202, the judgment is vacated and the cause remanded with direction that further proceedings be consonant with the views herein expressed.